Next case will be 07-1443. Cat Tech v. Tubemaster. See now, we have Mr. Gunn first. Yes, your honor. And you've divided up your time, I see. That is correct. I brought a patent lawyer with me to back me up if I get into trouble, to please the court. My name is David Gunn. The heart of this case is Issue 2, which is an infringement issue that arose below on cross motions for summary judgment. If we were going to argue this case in 30 seconds, I would ask the court to look at the diagrams, which you see in the briefing app. The blue brief has it on page 24, and I would simply pose in one sentence the rhetorical question. Does that diagram show, or does it not, a spacing between adjacent plates of less than the specified width? That is the heart of the case. Now, we're here, the Federal Circuit Court, to try to get this exactly right and consistent with all the cases and all the doctrines, so there's a little more than the 30-second argument, but that's the heart of where we're going. This is your claim construction argument. That is correct, your honor. That is the heart of the case. The first and the third issues in the case, we briefed and stand on the briefs, but it seems to me they're fairly straightforward. One striking thing about this case is there's not a great deal of fight about what is the law, what are the governing legal principles, nor is there any real fight about the facts. The dispute is about application. How do we apply known law to these facts? And if I might set the stage for that dispute. You know from the briefs the cat-tech method of loading particles into these tubes uses funnel-like devices with a horizontal flange or rim around it, which we call plates. Those plates can be pretty much any shape, polygons, circles, irregular shapes. But the idea is that the spacing is such that the catalyst will not be lost between the spaces. I think that is part of it, your honor. And that question, depending on how you visualize the idea, is actually the heart of my argument. And that conceptualization does seem at the heart here, because what the offending device is, with their circular or other described, they'll lose some of the catalyst between the plates. Your patented method will not. The district judge, right? It's designed so it won't. Not necessarily, your honor. That actually is the question. And while I think you and I are communicating that you've got your finger on the right issue, I don't want to send a signal of giving away the game, because the way we get to the answer depends on how the question comes up. That is actually what I think trapped the district court here, was thinking, what is the heart? Thinking like a common law judge, like I am as a common law non-patent lawyer. What is really going on at the heart of this invention? The problem with that became evident because both sides have a way to come at this semantically and say, well, my reading fits and my reading fits. The two sides are not quite meshing. If I might flesh out the context, because we're going to get to the claim construction fight, it's a little bit... You better get to it, because your time is running. Yes, your honor. The two master method you've seen used is circles, or modified circles. Circles with a tab or a mustache or rabbit ears, whatever you want to put on it. Something to avoid getting to what they thought of as the heart of our invention, which was polygons. And certainly polygons are a good embodiment of our invention. Well, no, but right there, the district court basically, I think, came to the conclusion that what you have claimed is a plate with a polygon or hexagonal shape or some shape like that, other than a circle plate, which will make it impossible for catalysts to be lost between open spaces. And that's what the court concluded. And we've said you start with, you look at Phillips, which expanded on the tronics, and we said you look to the language of the claims, and then you turn to the specification. And I went through the specification yesterday again. I'd read it before, but everywhere there's a description of a plate, other than a referring back to a previous point in the sentence. The background of the invention, the summary of the invention, the detailed description of the invention, and examples all refer to either polygonal shapes or hexagonal shapes. Plus, you have a statement in the prosecution history, picking up on the point Judge Young was making about, you know, the purpose here is to make sure that no catalyst is lost in open spaces. And I don't see how you can get around all of these. In fact, the only references to plates in the spec are to polygonal or hexagonal plates. Your Honor, there are claims, not the ones we're fighting about here, which use the word polygonal. There's no question. The claims in dispute here, claims 3, 4, 5, do not do that. No, you're certainly correct on that. But we have to, while we can't cross the line of reading a limitation from the spec into the claim, we do have to look at the claim and then take a look at the spec for further enlightenment to make sure that there hasn't been some kind of a disavowal of subject matter or whatever. And I look at the spec here, and I can only speak for myself. I can't speak for Judge Mayer and Judge Young. But I see lights going off every third or fourth sentence saying polygonal, hexagonal shape, that's it, that's it, that's it. I completely agree. And so it's not reading a limitation in or a preferred embodiment in. It seems to be a statement by the inventor, here is my invention. I take the point, Your Honor. We say that's not correct. I think that is actually over-reading the spec. I think it goes too far because these claims don't say polygon. These claims say they have other ways of getting to where we're going. We're talking about spacing between adjacent plates. It has a limitation substantially covered. I can't just have an arbitrary geometric design and still substantially cover. And if I might speak to the point of catalyst being lost, this is one where I personally am lost. I do not understand the idea that the district court adopted that catalyst would be lost under our reading. It is not lost in any way. And, in fact, the sweeping step is what keeps the catalyst from being lost. If you visualize it. In your proposal, of course it does. Yes. Of course it does because the catalyst rests there held up by the narrowness of the space. In their circles, some of it will go down below the plane formed by the circle. Not far. This far. The flange on top only sits up this much. And if you have a tile floor in your kitchen and you spill cereal on it, there may be cereal in between the tiles. But if you sweep it with a broom, it comes out. The catalyst is not lost. I think that's a big deal. I don't understand where the catalyst is going. Remember, it's not a cliff that falls off 20 feet. These tubes are maybe 20 feet tall, but there's a steel plate at the top. So the catalyst, under no circumstances, is lost. Is Mr. Todd going to be talking about these things that you don't understand? Yes, Your Honor. Maybe you've already exceeded your time. Maybe he can elucidate the parts that you don't understand. Go ahead. May it please the Court. Your Honors, the trap has sprung again, and it comes with the question that you asked Judge Young, and that was, isn't the invention to prevent whole particles from not getting trapped? And that's absolutely not true. The goal of both Tubemaster's invention, or Tubemaster's plate, as well as Cat Tech's plate, is to ensure that all whole catalyst makes it into the hole in the plate. The purpose of the spacing is to catch the dust and to catch the small particles. So when we look to say, isn't it true that the invention requires that you don't catch the whole particles? The answer is no. The invention is to help get the particles into the hole, that is for sure. But the purpose of the spacing is to collect the dust and the small particles. Now, it's important to look, while Judge Young perfectly pointed out that the specification describes the best embodiment, the best embodiment to capture the dust and small particles is to have polygons and to have… What I'm supposed to know, I think the specification, I agree with you, it does describe the best embodiment, but it seems to do more than that. It seems to say that the best embodiment is the invention. Because again, I went through this and I've marked in red everywhere that there's a reference to a plate and it's always a reference to a polygonal plate or a hexagonal plate. And I guess it's hard for me to escape the conclusion that the inventor is saying, not just preferred embodiment, but here is my invention. How do you get around all those references to plates that only talk about a plate of that kind of a shape? That's a difficult point for me. Right, Your Honor, we get around that by saying that certainly hexagonals or polygons are the best shape and the inventors are only required to disclose that which they regard as the best mode. That is the best mode of practicing it. But I mean, what I didn't see in this spec is the kind of language that we often see in a spec in the written description, in the summary of the invention, or an example of the invention, where we say here's a preferred embodiment of something. It was certainly tailored towards the hexagons or the polygons. But it's important, Your Honor, to then turn to the prosecution history. And what we see from two masters' briefing is an emphasis on the 977 of the parent patent. In that case, all the claims required polygons. And then when we move to the 660 patent, there wasn't even a rejection over art. The only rejection for claims 3 through 7 related to a 112 rejection, which is where the examiner was noting kind of what Your Honor has noted. We don't see support for anything broader than polygons. Therefore, we think the claim is not patentable. The applicants responded. First of all, in the rejection, the examiner clearly said, the way the claim is written now, ovals and circles are covered. The applicants responded. They didn't amend the claims. They merely said that under Raytheon, you're not to look to the specific embodiment in the spec, but the claims can be broader than that. Are you referring, Mr. Patterson, to the, I guess the page 239 of the appendix? If you go to the appendix at 222, if you look at the top of 222, the examiner in his 112 rejection of claims 3 through 7, I note that 1 and 2 were allowed without any prosecution, but it says at the bottom of the first incomplete paragraph, it says that second line polygonal and does not provide support for the more general term shape, what would or could, it's incorrect, they're also comprised of non-polygonal shapes such as ovals or circles. Now, if we flip over to the response by the applicant, and that would be at the appendix at page 239, in the second paragraph, the applicants clearly say, accordingly, the description in the spec that the plates are polygonal does not limit the claims to only plates with shapes that are polygonal. The purpose of the file history is public notice. Where's that stated? If you look at the third line of the second full paragraph at 239, starting with accordingly, this is clear evidence that not only the examiner, but the applicant and the public in reviewing the prosecution history understands that the circles are covered. They were intended to be covered. The other interesting point to note about the claim language is, is in the first... Let me ask you, Mr. Peter, what do you make of the statement at the bottom of the last paragraph? The statement that, I guess it's about five lines, starts about five lines up and says, additionally, the specification at. What is that getting at there, in your view? Refer me again, Your Honor? Well, it says it's five lines up. It says, additionally, the specification at page 9, lines 9 through 11, states that the gap was sufficiently small as not to allow any whole catalyst particles to enter, but allow small chips and broken pieces of catalyst. Applicants note that the examiner has indicated in the reasons for allowance that this spacing is not taught or suggested by the art. That suggests that they're saying a device where spacing is such that nothing can fall down between a crack. Right. I think to understand what that language is referring to, you have to look at the first element of the claim. And it's not just the polygonal... It's not just the plates themselves. It's not just the spacing. But the claim requires that the plates substantially cover the upper surface of the tube sheet. So we know we have to have a certain amount of plate, once you position them in their array, to cover most of the tube sheet because you're trying to ensure that most catalyst goes into the openings. So the way that can be distinguished is the fact that you have to cover substantially most of the upper area and you have to provide a spacing or relative position between adjacent plates, you're going to create that gap. And that gap is going... That space or that gap is going to be the area where dust and particles can be collected. Your Honor, I see my time is up. Okay. We'll... We used your rebuttal time, but we'll give it back to you. And Mr. Murrell. Murrell. Murrell. We need a couple extra minutes. You can take it. May it please the Court. I also agree that the claim construction and the non-infringement opinion is the primary thing driving the appeal and wanted to focus our attentions there. I first want to begin with clearing up something that was said about the sweeping means, or the sweeping method that's disclosed in the patent, as somehow meaning that there will not be whole pieces of catalyst lost using the two-master system. Quite frankly, that's a misunderstanding of what they teach themselves. As I think you pointed out, Judge Young, what you picture here is that these plates, and in the example in the specification says, gives us an example of a plate with a 5-millimeter depth and talks about catalyst being about 8 millimeters. So you're talking about having a center line for the catalyst that's below the plate cap. So you're talking about that when you sweep, you would not be sweeping, by definition, under our scenario, under our plates, you would not be sweeping the whole pieces of catalyst in when you go across those openings, those gaps. If they're in them, they're going to stay. Just how do you sweep? You take your hand. That's the preferred method that's shown. These are big, dusty places, thousands of holes in them. You have restricted height ceilings in a lot of people, have all types of breathing gear on because this stuff's not safe to breathe in. And you have workers down on their hands and knees, they've poured the catalyst onto the tubes, onto the plates, which is another point. Their patent teaches in Clinton III that the catalyst is poured onto the plates, not into the spaces, but onto the plates, because, of course, the gaps are not supposed to be large enough to allow a whole piece of catalyst in. And then you take your hand and you sweep it across those plates. If you have these gaps that are larger than a whole piece of catalyst and where they're teaching in the example, the plate is of a depth that is almost equal to the diameter of the catalyst that's being loaded, you're not going to sweep that in. You're going to lose whole pieces of catalyst. And that's exactly what they told the PTO, and it's what they teach in their specification, and it's what they claim in their language is a device that won't allow that to occur. And you claim to have designed around that by just accepting the fact that that's going to happen. And not just accepting it. Prior to the issuance of the patent, we had actually used our device. And the affidavit in the record is, we lost whole pieces of catalyst by losing them. They're too valuable to lose. You end up vacuuming, having to go in a vacuum, and you try to recycle and reclaim some of the value. But you've lost value. If the district judge's construction is correct, which is something you want us to conclude, nevertheless, one could conceive, I think, if my geometry serves, of ovals, perhaps. Something not hexagonal or polygonal, but something that you would design where, given the size of the catalyst for a particular operation, you wouldn't lose whole pieces. If you designed such a device, it would infringe their patent. You're saying if my plates were such a depth that the sweeping would bring it in? If, no. I'm saying if the design of the flange, or the plates, as you call them, were such that it would, whatever the outer periphery, were such that the spaces between would catch whole catalysts, all the whole catalysts, you're violating their patent. On the district judge's construction, correct? I don't believe so. I may be just fundamentally misunderstanding you, Your Honor. If I have it, or I have spaces, or a space between plates that is larger than a whole piece of catalyst, I am not infringing. And so the district judge ruled, and I can conceive of that. I'm simply suggesting to you a design that's not polygonal, where every whole piece of catalyst will be retained, though the spaces between plates vary. I see what you're saying. In fact, I think that comes to the attention that Judge Shaw was speaking with them. Yes, the specification goes polygonal and hexagonal. I don't know that we have to go as far as to say that their claims are limited to that, and we can do with what the trial court said by doing what the patentee itself did in focusing with the PTO, which is saying that the sizing of the space is what defines it. And it can be... We've pictured like a rose-shaped... And so the answer to my question, now that you're dealing with all of us, but the answer to my question would be yes, then. Yes. All right. But that is not the analysis we have here. What we have here is clearly designs where it does not fall within the parameters of the patent. And there is a fundamental difference in the briefs on the application of Phillips, I believe, attention, in that when I read the reply brief, I read a context or an implication that the court should only look at the prosecution history for prosecution disclaimer, that it has to rise to that level. And instead, Phillips teaches us that we look at the prosecution history to understand what the inventor and the examiner understood for the purposes of claim construction. It can also rise to the level of prosecution disclaimer, but it doesn't have to. And in this case, first of all, when you look to me at the claims themselves and you read the space between plates, that is clear and unambiguous when you look at the application. That means the spacing. It's not a space. This gets down to the issue of what the word A means, the article A, that line of cases. That line of cases. If, when you look at the claims and after you look at the specification, which I don't think exists, but if there was some ambiguity as to whether or not this allowed for an infinite number of spaces between these plates as their interpretation would allow, an infinite number, if you got to that point, when they told in the parent application, the examiner, after they had put in the spacing limitation into the apparatus claims, the statement that the adjacent plates do not fully touch but are separated by a gap, each gap. Now that word each being highly important. Each gap having a width that is less than the smallest dimension of a particle to be loaded. That is what they told the PTO and the examiner to get this through after the examiner had told them the spacing was a novelty that was going to allow them to get their claims through. Each gap doesn't allow for an infinite number of spaces. Some of them, which allow a whole piece of particle on the catalyst, it just does not permit that. They told the examiner each gap. They then go on to describe their invention as forming multiple channels between plates.  Now there's been an over-abuse of an analogy in the briefs by both sides about the English channel and where you measure it or where you don't measure it. Quite frankly, in defining their invention, the inventor said it was the entire English channel because it said multiple channels are formed. All of this is teaching us one thing, that a spacing in the claim means that space between the plates, not an infinite number, but the spacing. It's consistent with everything that happened in this case. Now, I would like to spend a little time, unless the court has any other questions on the claim construction issue itself, I would like to spend a little bit of time on the Article III issue. I understand that the state... Unless the judges have questions about that, they didn't get into that. If the court doesn't have any questions, then I'm done. I do have one question. On that issue, what is the result here if we affirm the judge's exercising of jurisdiction over the other devices that are ready at the starting gate? Because at the trial court below, there was an argument made on the merits as to design number four. And that was circular with these tabs that looks kind of like the configuration we have now, but it has some tabs in it. There was an argument below that that would infringe because it had pinch points as well, which was overruled by Judge Ellison based on his claim construction. There was an argument that configuration number two was not definite enough for determination. So in addition to this issue of whether or not there was a case in controversy, there was arguments as to the merits as some of these alternative configurations. But you can't bootstrap yourself into a case in controversy. Right. But I guess my point was they didn't appeal that. They didn't appeal the final decision. Has the judge ruled in effect that certain items other than what we see in the picture here, I'm sorry, the circular, do not infringe? Yes. He found specifically that one and two, which do not have a point anywhere smaller than a whole piece of catalyst. In other words, I still take exception to the idea that this spacing becomes a pinch point. And I don't accept that. But even if you did accept that, one and two are such configurations, they made the plates so much closer in size with the circumference of the aperture that there's room for whole pieces of catalyst everywhere. There is no space less than a whole piece of catalyst in the design. He said that does not infringe. So these other devices have been found not to have infringed. And the only appeal that's been brought or raised in the brief is on whether there was a case in controversy. If you find there was a case in controversy, then the finding stands that those other devices do not infringe. Well, with all respect, it's really a ruling, isn't it? Yes, I'm sorry, a ruling. I apologize. If there's nothing else, Your Honor. Thank you. Thank you. Mr. Dunn? This does come down, Your Honor, to the question of A. What is A? The Lano case is on A. What is A spacing? That's been teed up in the briefs. Your question, Judge Young, about the ovals or variations on that that would have very close spacing at one point and then distant spacing at another, I think the way we handle that is through the requirement of substantial coverage. The plates have to substantially cover the tube sheet. So I don't think those long ovals, which we can conceive of mentally, would work. I don't think that is realistic. We take care of that with substantial coverage. And if they want to try a device like that, then that's a different issue. Mr. Dunn, let me ask you, and I sort of injected this with my question, but if one accepts as correct, I'm speaking hypothetically here, if one accepts as correct the district court's claim construction that led to the conclusion that the round plates do not infringe, would that construction also mean that the plates that were at issue in the context of the Article III question also did not infringe? I don't know the answer to that. The other configuration struck me as so hypothetical. I just really haven't engaged that. And it's correct. We didn't challenge that on appeal. I don't know that it was really teed up below. And it's not an oversight. And the only one that you're ever going to see in the real world is Configuration III. I'll give the court back the rest of my time unless the court has further questions. Thank you very much. All rise. I move that the Court adjourns until tomorrow morning at 10 o'clock a.m. Nice to meet you. It's a real pleasure to meet you.